# Culp versus The Commonwealth.

1. The Gas Works constitute one of the agencies or departments of the city of Philadelphia, similar to the Water, Health or Fire departments of the city government, and the persons employed by the trustees of the Gas Works, are, in the discharge of their duties, employees of the city and as such amenable to indictment under the Act of June 12th, 1878, (P. L. 196), for embezzlement of funds coming into their hands in pursuance of said employment.

2. Such an indictment found within four years from the time when the

misdemeanor was committed, is valid under Sec. 6, of said Act, and is not barred by the General Statute of Limitations of March 31st, 1860.

March 24th, 1885. Before MERCUR, C. J., GORDON, PAX-SON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Quarter Sessions of *Philadelphia county:* Of January Term 1884, No. 432.

Indictment of Martin W. Culp, for a misdemeanor. Plea, not guilty.

The defendant was indicted, July 11th, 1883, for embezzlement, under the Act of June 12th, 1878, (P. L. 196), alleged to have been committed by him on August 7th, 1880, as a clerk in the employ of the trustees of the Philadelphia Gas Works. The indictment was in nine counts, in six of which the defendant was described as "a municipal officer, to wit, a clerk and receiving clerk in the employ of a certain municipal corporation, to wit, the city of Philadelphia, in a certain department of the said city for supplying gas to the said city, known as and commonly called the Philadelphia Gas Works." In the three remaining counts he was called a "clerk or servant of the trustees of the Philadelphia Gas Works."

In all the counts the embezzlement was alleged to be, "of the goods and chattels, money and property of the said trustees of the said Gas Works."

The Act of June 12th, 1878, provides as follows:

"Sect. 2. If any person, being an officer, director, superintendent, manager, receiver, employé, agent, attorney, broker, or member of any bank or other body corporate, or public company, municipal or *quasi* municipal corporation, shall fraudulently take, convert, or apply to his own use or to the use of any other person, any of the money or other property of such bank, body corporate, or company, municipal or *quasi* municipal corporation, or belonging to any person or persons, corporation or association, and deposited therein or in possession thereof, he shall be guilty of a misdemeanor."

"Sect. 6. That indictments for misdemeanors committed by any officer, director, receiver, superintendent, manager, broker, attorney, agent, employé, or member of any bank, body corporate, or public company, municipal or *quasi* municipal corporation, may be commenced and prosecuted at any time within four years from the time the alleged offence was committed."

The evidence established acts of embezzlement committed by the defendant and that he was at the time, a clerk and receiving clerk in the employ of the trustees of said Gas Works; and further that said acts were committed by him

more than two years and less than four years prior to the finding of the bill against him.

On behalf of the defendant the court was asked to charge:

(1) That as the defendant was not indicted within two years next after the date or dates when the alleged misdemeanors are charged as having been committed, they must find a verdict of not guilty.   Refused.

(2) That in order to find a verdict of guilty, they must find that the defendant was an officer, employé, or clerk of the city of Philadelphia at the time the alleged misdemeanor or misdemeanors are charged as having been committed; and proof that he was at that time an employé, officer, or clerk of the trustees of the Philadelphia Gas Works, is not evidence of the fact.   Refused.

(3) That under the evidence they must render a verdict of not guilty upon all the counts of the indictment.   Refused.

The jury returned a verdict of guilty, and a motion for a new trial was subsequently dismissed by the court, J. I. CLARK HARE, P. J., delivering the following opinion (after stating the facts and the provisions of sections 2 and 6, of the Act of 1878).

The case consequently depends on whether the defendant was an officer, receiver, agent or employé of a municipal or *quasi* municipal corporation within the large and comprehensive language of the Act.

To common apprehension this question may be easily answered.   The Gas Trust is an agency established by the city of Philadelphia as a means of supplying the citizens with gas, and the money which the defendant received and failed to account for, was collected under an ordinance of the city of Philadelphia for the purpose of paying a city loan, and, in so doing, free the property of the city which had been pledged for the debt.   It was therefore, money of the city, received and to be applied on her behalf, and the defendant was none the less the servant of the city because he acted in a subordinate capacity, and was not appointed directly by her.   If, as has been said, the trustees of the Gas Works cannot be removed by Councils, save for cause shown and after trial, this, before the new constitution, was equally true of the heads of the water and highway departments and is still applicable to the Board of Health and the clerks and officers whom they appoint.   Nor, so far as I can discern, does it materially vary the case that the sums due for gas are collected by the trustees and disbursed by them, instead of being paid into the city Treasury and appropriated by councils.   Were a like rule established in the administration of the water department by law, or as a result of a contract with third persons, the chief

engineer and his subordinates would still be municipal officers and liable for the embezzlement of the money which it is their duty to apply to public use. The inquiry might, it would seem, stop here, but as the subject is one of some importance, I will proceed to examine it more in detail.

As Judge THAYER, observed in Strawbridge *v.* The City of Philadelphia, 13 Phila., 173, the Act of April 2nd, 1790, "gave the city full power to ordain and establish whatever laws might be convenient or necessary for the purpose of lighting the city : " and we need not inquire whether the ordinance of March 21st, 1835, was in all respects a legitimate exercise of that power, because there can be no doubt of the legality of the result. For when the city took possession of the Gas Works under the privilege originally reserved, the anomalous joint stock company which the ordinance had sanctioned was dissolved, and the Gas Works became as much a purely municipal agency as if they had been established on that basis in the first instance. True, the ordinance of January 14th, 1841, by which the change was effected, declared that the Gas Works should remain under the care and superintendence of the trustees then existing, until otherwise provided for; but this clause implied rather than negatived the right of councils to control the Gas Works equally with the other branches of the city government. On the 17th of June, of the same year, however, councils passed another ordinance, which in some respects materially varied the case, while leaving it in others unchanged. By that ordinance a loan of $125,000 was authorized for the purpose of extending the works, the money to be borrowed in such sums as might be required by the trustees, and the rate of interest fixed by them; and the faith of the city, and the buildings, apparatus, pipes, income and profits of the Gas Works were pledged for the punctual payment of the interest, and for the ultimate reimbursement of the principal of " all loans made for or on account of the said Gas Works as the same should become due." For the further security of the said loan holders, it was also "stipulated that the works shall be controlled and managed by a board of trustees, elected and constituted as heretofore, who shall have the whole control and management of the said works, and of the said sinking fund, and of all the other funds belonging to the said works and the said trustees shall pay no part of said fund, nor any part of the profit of said works into the city treasury, but shall apply and appropriate the same as is directed by this ordinance, until the interest and principal of the said loans shall be fully paid as they become due to the said loan holders." There can be no doubt that the effect of this ordinance was to place the city of Philadelphia, as it regarded the control and manage-

ment of the Gas Works and the land on which they stood, in the position of a private corporation relatively to the loan holders, and so far as was requisite for the security of the loan. The transaction operated as a mortgage of a branch or department of the city government which, from its nature was susceptible of being so pledged, and the city was bound in law and morals to take no step that would render the security less available. The judgment of the Supreme Court, in the noted case of Western Saving Fund v. City of Philadelphia, 7 Casey, 175, 185, decides thus much, but it decides no more. What it establishes is that, like other mortgagors, the city of Philadelphia ceased to be an owner so far as was requisite for the security of the loan holders, and not that it did not continue to be an owner for other purposes, or as it regarded the rest of the world. The Supreme Court did not say, nor was the question before it for consideration, that the Gas Trust was not a public trust, or that the city of Philadelphia acted as a private corporation in providing the citizens with gas, but simply that the loan holders were entitled to require that the public faith should be kept with them, precisely as if private faith had been pledged by a corporation constituted for merely private ends. Hence, as the ordinance of June 17th stipulated that the Gas Works should be controlled and managed by a board of trustees, elected and controlled as heretofore, the number of trustees could not be altered, nor could they be required to pay the proceeds which had been specifically pledged, into the city treasury for general purposes. But the trust was not on that account less a trust for the payment of a public debt, confided to persons designated by the city, and bound to render her the account which every fiduciary owes to the parties who are interested in the faithful performance of his charge. So the land, buildings and apparatus of the Gas Works, and the right to employ them for the purpose of lighting the city and supplying the citizens with gas, and the profits resulting therefrom, were and are the property of the city, subject only to the repayment of the loan.

It seems to me, therefore, that the Gas Trust is as much a public agency established for municipal purposes, as it regards the city of Philadelphia and the community at large, as though it were not mortgaged to the loan holders, and bound by stipulations which must be observed until the debt is paid; and I find nothing in the ordinances to which I have referred, or the interpretation put on them by the Supreme Court contrary to the opinion already intimated, that the defendant acted as a servant or agent of a municipal corporation, and might properly be convicted under the Act of June 12th, 1878.

It has nevertheless been contended, that the trustees of the

Gas Works, though elected by councils, cannot be removed during the continuance of their term of office consistently with the contract with the loan holders; they are not city officers, or, at all events, that this name cannot be given to the subordinates whom they appoint and who are exclusively under their control. Such a criterion would singularly limit the number of public servants, if applied at common law where offices were incorporeal hereditaments, and the occupant could not be removed, save for some sufficient cause, and an opportunity to be heard in his own defense: Field *v.* The Commonwealth, 8 Casey, 478. The question is not who appoints the officer, or by whom he may be dismissed, but are his duties private or such as concern the public weal. Were the charge of supplying the city with water vested in the Mayor, as was recently suggested, and engineers appointed by and responsible to him, and were he further authorized to defray their salaries and all other necessary expenses out of the water rents, the water department would be less dependent on councils than is the Gas Trust, and yet no one would contend that it was not a branch of the city government, or within the scope of a law passed to keep municipal officers in the path of duty.

A municipal corporation is an agency established by the state directly or through an intermediate channel, for the administration of a town or district, and wherever such an agency exists, it may justly be termed municipal, whether its functions are lodged in a single hand, or confided to various bodies acting independently, or as an organic whole.

The Board of Health, which is appointed by the judges of the courts of Common Pleas, and the commission which has been entrusted with the erection of the public buildings, are, for instance, not less truly municipal than the city councils, and it was no doubt to agencies of this description that the legislature had reference in using the term *quasi* municipal in the Act of June 12th, 1878. Whether, therefore, the Gas Trust be regarded as independent of or as subordinate to councils, it is equally within the scope of a law intended for the protection of the cities, towns and boroughs of this state, by making the officers and agents whom they appoint, or who are duly authorized to represent and act for them in their corporate capacity, answerable for the misappropriation of the money entrusted to their care.

The motion for a new trial is dismissed.

The defendant was sentenced to pay a fine of one cent, undergo an imprisonment of one year and pay the cost of prosecution. Whereupon he took this writ, assigning for error, *inter alia,* the refusal of his points.

[Culp v. Commonwealth.]

*P. F. Rothermel, Jr.*, for plaintiff in error.   The sole question raised by the record is whether the defendant below was an employé of a municipal or *quasi* municipal corporation so as to bring him within the provisions of the Act of June 12th, 1878.   If not, the prosecution was barred by the General Statute of Limitations of March 31st, 1860.   The evidence simply showed that he was a receiving clerk of the trustees of the Philadelphia Gas Works and the decision of the case rests upon the relation of these trustees to the city of Philadelphia. The origin of this relation will be found in the ordinances of March 21st, 1835, June 17th, 1841, and March 20th, 1855, and a concise statement of the effect of these ordinances in the opinions of LOWREY and STRONG, JJ., in Western Saving Fund Society *v.* City of Philadelphia, 7 Casey, 175 and 185.   These cases decided : First.—That the ordinances referred to constituted a binding contract between the city and the loan holders, and hence could in no way be interfered with by the former without the consent of the latter.   That by the terms of the contract the trustees became trustees of the property which constituted the Gas Works, of the business of manufacturing and selling gas, and of the receipts and profits therefrom for the loan holders until the loans should be paid in the manner provided.   Second.—That in entering into this contract the city acted not as a municipality but as a private corporation.

If then the trustees of the Gas Works are not officers or agents of the city but of a private corporation, their employés are not "officers, clerks or receivers" of the city, within the meaning of the Act.

*John A. Siner* assistant District Attorney (with whom was *George S. Graham*, District Attorney), for defendant in error.—By the consolidation Act of 1854 it is provided as follows :

"Sect. 9. The councils shall, in joint meeting and by *viva voce* vote, appoint all the heads of departments not elective, and shall provide by ordinance for the appointment of clerks and officers, except the Mayor's clerk, who shall be appointed by the Mayor."

It appears from the same Act that the Gas Works, as at present organized, were denominated by the legislature a department of the city of Philadelphia.

"Sect. 50. It shall be the duty of city councils to provide by ordinance for the establishment and regulation of all the departments indicated by this Act and other laws in force in the city of Philadelphia, under the proper heads and with the necessary clerks, officers, and assistants, to wit : For law,

13 OUTERBRIDGE—24

police, finance, surveys, highways, health, .water, gas, &c.;
. . . . . and through the Mayor and proper committees the
said councils shall maintain a supervision of each department,
whether corporate or otherwise."

By an ordinance of the city of Philadelphia it is provided as
follows:

Sect. 1 of ordinance of July 3, 1854: "That for the purpose
of supervising the operations of the different departments, &c.,
the following joint standing committees shall be appointed by
the respective presidents annually."

The third committee named in the ordinance is—

"III. A committee on department of gas."

By ordinances of 1841 and 1855, full power to manage the
Gas Works was delegated by councils to the twelve trustees
whom they had selected. Sect. 1. of 1855, authorizes the
trustees to take exclusive control of the management of the
Gas Works and to make contracts for material, and labor to
be employed therein. It clearly appears, therefore, that the
Gas Department is a department of the city of Philadelphia
and that the trustees are its agents, and it was in their capacity
as such agents that the defendants were employed. The
opinion of the court below is also adopted as part of our
argument.

Mr. Justice STERRETT delivered the opinion of the court,
May 25th, 1885.

The first section of the Supplementary Act, June 12th, 1878,
under which plaintiff in error was indicted, declares: "If any
person being an officer, director, superintendent, manager,
receiver, employé, agent, attorney, broker or member of any
bank or other body corporate, or public company, municipal
or *quasi* municipal corporation, shall fraudulently take, con-
vert or apply to his own use or to the use of any other person,
any of the money or other property of such bank, body cor-
porate or company, municipal or *quasi* municipal corporation,
or belonging to any person or persons, corporation or associa-
tion, and deposited therein or in the possession thereof, he shall
be guilty of a misdemeanor:" P. L., 196.

The indictment in this case contains nine counts, in some
of which the defendant is charged with embezzlement as a
municipal officer and also an employé, "to wit: a clerk and
receiving clerk in the employ of a municipal corporation, to
wit: the city of Philadelphia, in a certain department of the
said city, for supplying gas to the said city, known as and
commonly called the Philadelphia Gas Works;" and in others,
as "clerk or servant of the trustees of the Philadelphia Gas
Works." In each of the counts the embezzlement is alleged

to be "of the goods and chattels, money and property, of the said Gas Works." The evidence, in support of the material allegations in the indictment, was abundant. Acts of embezzlement, committed by defendant as clerk, receiving clerk and agent of the Philadelphia Gas Works, in the employment of the trustees of said works, more than two and less than four years prior to the finding of the bill, were so clearly proved that the jury could have no doubt as to the facts. On behalf of defendant the court was requested to charge—

1st. That as defendant was not indicted within two years next after the date or dates when the alleged misdemeanor or misdemeanors are charged as having been committed, they must find a verdict of not guilty.

2d. That, in order to find a verdict of guilty, they must find that the defendant was an officer, employé or clerk of the city of Philadelphia at the time the alleged misdemeanor or misdemeanors are charged as having been committed, and proof that he was at that time an employé, officer or clerk of the trustees of the Philadelphia Gas Works, is not evidence of the fact.

3d. That, under the evidence, they must render a verdict of not guilty upon all the counts of the indictment.

The learned judge very properly refused to charge as requested, and submitted the case to the jury with proper instructions as to the law applicable thereto.

The main ground of defence was that the prosecution was barred by the general statute limiting the time within which misdemeanors (with a few exceptions) may be prosecuted, to two years; but if the indictment is properly framed under the section of the Act above quoted, and is supported by competent testimony, there is nothing in that ground of defence, because the 6th section of the Act declares that indictments for misdemeanors committed by either of the persons named in the first section "may be commenced and prosecuted at any time within four years from the time the alleged offence was committed." The controlling question therefore is whether the defendant was a clerk, receiving clerk, employé or agent of a municipal or *quasi* municipal corporation, as charged in the indictment? The solution of this question depends on the relation existing between the city of Philadelphia and the trustees of the Gas Works. If the Gas Works constitute one of the agencies or departments of the city, similar to the Water, Health or Fire Departments of the city government, it follows that persons employed by the trustees, in the discharge of their duties, are employés of the city in the same sense and to same extent as persons employed by the Commissioner of Highways or the Chief Engineer of the Water Works. The fact that the trustees, to whose immediate management

the Gas Works are entrusted, have special duties to perform in the interest and for the protection of those who advanced money to establish the works, does not make the Gas Works any the less an agency or department of the city. A municipal corporation is an agency established, directly or indirectly, by the State for the better administration of certain local affairs of a district, town or city; and whenever such an agency exists, it is justly termed municipal, whether its functions be lodged in a single hand or confided to various departments or bodies acting independently or as an organic whole. But it is not our purpose to further discuss the questions raised by the assignments of error in this case. They have been so fully and ably considered by the learned president of the court below in his opinion overruling the motion for a new trial, that nothing we could say would add to the force of his argument or the correctness of his conclusions. For reasons suggested and fully presented in that opinion, the several assignments of error are not sustained.

> Judgment affirmed and record remitted to the court below for the purpose of execution.